Maurice F. STONE

v.

STATE of Maine.

Supreme Judicial Court of Maine.

Aug. 2, 1966.

Platz & Day, by Thomas E. Day, Jr., Lewiston, for plaintiff.

John W. Benoit, Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, and DUFRESNE, JJ.

WEBBER, Justice.

This is an appeal by petitioner for the writ of habeas corpus from the decision of a single justice discharging the writ and affirming sentence. The facts, the issues and the principles of law applicable thereto are well and fully set forth in the decision of the learned justice below, which is reproduced herewith in its entirety.

"DECREE

Upon a petition for post-conviction relief under the provisions of 14 M.R.S.A. Secs. 5502–5508 in which petitioner is represented by self chosen and employed counsel, a writ was issued for the attendance of the petitioner and hearing was held at Augusta, Maine, on September 20, 1965.

The petitioner was convicted of murder at the March Term, 1956, of the Superior Court for Piscataquis County and here seeks release under the post-conviction habeas corpus act alleging:

That during his trial for murder his court appointed counsel caused him to withdraw his plea of not guilty and to be inquired of over whereby, in surprise, he pleaded guilty to murder.

That at the time of such plea he was not aware of the consequences and that it was not freely and voluntarily made.

That the entry of his plea of guilty to murder, deprivation of jury trial, deprivation of an opportunity to take the stand in his own defense, and deprivation of an opportunity to make a statement in his own behalf before imposition of sentence was constitutional error.

Upon hearing and submission of documentary evidence consisting of copies of docket entries (State's Exhibit 1) of the case before the Superior Court and transcript of that portion of the record of the case having to do with the withdrawal of the plea of not guilty and entry of a plea of guilty, upon inquiry, (Petitioner's Exhibit 1) it is determined factually:

That the petitioner was charged with murder.

That at the time of trial petitioner was 29 years of age and had gone to school through the 8th grade.

That on the 4th day of the reference term of Court, he appeared in Court, without counsel, and then stated he wanted to plead guilty and did not want counsel.

That the Court after colloquy, appointed counsel of petitioner's then choice.

That on the 7th day of the term he appeared in Court, with his appointed counsel, and upon arraignment entered a plea of not guilty.

That during the presentation of the State's evidence and at a point in the trial when the State was about to offer his written confession, and after objection and argument by defense counsel against its admission, and a ruling of admission indicated by the Court in Chamber conference, his appointed counsel advised him to withdraw his plea of not guilty and submit to inquiry over as to his plea.

That counsel's reason for so advising petitioner, as related upon the hearing of the current petition, was that the evidence with the confession would place the then respondent in a much more prejudicial light in the eyes of the State against that time when he might seek commutation of sentence or pardon, than confessed guilt without the written confession.

That such procedural judgment by counsel was not such 'ineffectual assistance'

as to make the proceeding 'a mockery of justice'. United States v. Horton, 334 F. 2d 153, 155 (2 CCA 1964) and Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436 (2), 439 (1963).

Upon combination of written argument and briefs following the hearing, petitioner's counsel limits his attack upon petitioner's present incarceration to two issues (a) that the petitioner did not voluntarily and effectively change his plea from not guilty to guilty, and (b) that under the statute in effect at the time of petitioner's conviction, his sentence to life imprisonment was illegal. Competence of the petitioner to plead is not otherwise in issue.

The burden is upon petitioner to establish that his withdrawal of his plea of not guilty and entry of his plea of guilty was not voluntarily and understandingly made. This he has not done. Conceding that the petitioner's attempt to plead guilty upon arraignment, in absence of counsel, should not be used against him on a determination of guilt or innocence,— which his counsel urges, we are not here concerned with the merits of the charge against him. We are here concerned with the question of constitutional error in the proceeding out of which his conviction resulted. In the light of his representation at this time that the conduct of his court appointed counsel at trial surprised him and resulted in an involuntary and misunderstood plea of guilty, we do consider the fact of his awareness three days before trial when unrepresented by counsel that he was in fact responsible for the death of his victim and wanted to clear his conscience in that regard. We find nothing involuntary or misunderstood about the plea.

As to the application of the sentencing statute in March of 1956, it is found prior to August 8, 1953:

The sentence upon conviction for murder was mandatory life imprisonment. Section 1, Chapter 117 R.S.1944.

Other statutes provided that upon conviction for a crime involving imprisonment in the State Prison the court imposing sentence 'shall fix maximum and minimum terms, the maximum term not to exceed the longest term fixed by law for the punishment of such offense and the minimum term not to exceed one-half of the maximum term' above referred to. Section 11, Chapter 136 R.S.1944.

The statute also provided that the maximum-minimum sentence referred to above 'shall not apply to any person convicted of murder' nor to persons convicted of other offenses not here pertinent. Section 12, Chapter 136 R.S.1944.

By Chapter 382 P.L.1953 effective August 8, 1953, Section 12 of Chapter 136, above referred to was amended to read as follows:

'The provisions of Sections 11 to 26, inclusive, shall apply to any person convicted of an offense the only punishment for which prescribed by law is imprisonment for life, providing such person has never been convicted of any other capital crime, but such person may be eligible to parole after serving 30 years' imprisonment. The provisions of sections 11 to 26, inclusive, shall not apply  *  *.'

The above three sections of the statute, as Section 1, Chapter 130 R.S.1954, having to do with the sentence for murder, and Section 11 and Section 12 of Chapter 149 R.S.1954, having to do with sentencing, were in effect at the time of the petitioner's trial, conviction and sentence. He was sentenced to imprisonment for life (Petitioner's Exhibit 2) and he now urges that such sentence was violative of the statute, was illegal and that his incarceration thereunder is invalid.

The three sections of the statute involved express a conflict.

Section 1, Chapter 130 R.S.1954, makes imprisonment for life mandatory upon a conviction for murder. Section 11 and Section 12, Chapter 149 R.S.1954 require

that a sentence to the State Prison shall fix minimum and maximum terms with a provision that the minimum shall not exceed one-half the maximum and that this provision of Section 11 'shall apply to any person convicted of an offense the only punishment for which prescribed by law is imprisonment for life (murder)' and that such person may be eligible to parole after serving 30 years' imprisonment.

One interpretation of Section 12 is that imprisonment for murder shall be expressed as for a term of not less than 30 years nor more than life. Such interpretation might express the intent of the legislature to make a person convicted of murder eligible to parole after 30 years' imprisonment, but such interpretation would violate the provisions of Section 11, that in fixing a maximum-minimum term, the minimum term shall not exceed one-half of the maximum term, for it is an impossibility to determine at time of sentence the minimum term in years consisting of not more than one-half the life time of the respondent.

If the intent of Section 12 was to alter the form of Section 12 to the extent of providing for eligibility to parole after serving 30 years of a life sentence, the statute does that without regard to the maximum-minimum provisions therein. We so interpret Section 12. This section was repealed by Section 20, Chapter 387 P.L.1957 and has not reappeared.

The mandatory life sentence under Section 1, Chapter 130 R.S.1954 was specific and in effect. The amendment to Section 12, Chapter 149 R.S.1954 did not alter the mandatory life sentence and only added entitlement to parole after service of 30 years imprisonment for a person convicted of murder.

The writ of habeas corpus is discharged and sentence is affirmed.

Dated: November 17, 1965.

(Signed) Harold C. Marden
Justice, Supreme Judicial Court"

■ We can add little to this careful and accurate analysis of the facts and law and that little serves only to fortify the decision below. As to the facts, we would set aside the findings of the sitting justice only if they were "clearly erroneous". James, Petr. v. State of Maine (1964) 160 Me. 362, 365, 204 A.2d 187 (cert. den. 380 U.S. 922, 85 S.Ct. 920, 13 L.Ed.2d 806). In this case the findings were fully supported by credible evidence. As to the law, we find no error. In particular, we are satisfied that the Legislature had no intent to modify the substantive effect of R.S.1944, Ch. 136, Sec. 12 by its amendment in P.L. 1953, Ch. 382 other than to provide a parole privilege for persons serving mandatory life sentences. In argument of this appeal the petitioner admits that during the four year period before the 1957 repeal, the court could not possibly conform to any requirement that a minimum sentence not exceed one-half of the maximum sentence fixed by statute where such maximum sentence was for life. He contends therefore that during this four year interval no legal sentence for the crime of murder was possible. Such a result would of course be absurd and unthinkable and the Legislature clearly intended otherwise.

The 1953 amendment was designed to be a part of a process of revision of the law relating to parole. Of the 16 sections referred to (R.S.1944, Ch. 136, Secs. 11 to 26 inclusive) 14 of them (secs. 13 to 26 inclusive) dealt with parole and matters related directly or indirectly thereto. At the same session (P.L.1953, Ch. 404) the Legislature revised the parole law extensively and with respect to secs. 11 to 26 inclusive took the following actions:

Sec. 18 amended by P.L.1953, Ch. 404, Sec. 6;

Secs. 15, 16, 21, 25, 26 repealed by P.L.1953, Ch. 404, Sec. 7;

Sec. 20 amended by P.L.1953, Ch. 404, Sec. 8;

Sec. 22 amended by P.L.1953, Ch. 404, Sec. 9;

Sec. 23 amended by P.L.1953, Ch. 404, Sec. 10.

As already noted, in 1957 the Legislature repealed Sec. 12 entirely (P.L.1957, Ch. 387, Sec. 20). The same chapter by its Sec. 1 enacted a new Chapter 27–A, Probation and Parole Law. Its Sec. 12 provided in part: "A prisoner becomes eligible for parole from State Prison as follows: * * * III. After the expiration of a 30-year term of imprisonment, when he has been convicted of an offense punishable only by life imprisonment, provided he has never been convicted of another offense punishable only by life imprisonment." Thus in 1957 the Legislature carefully preserved the parole privilege which it had created by P.L. 1953, Ch. 382 while eliminating everything else that had been contained in the old Sec. 12 of R.S.1944, Ch. 136. We conclude as did the justice below that it was the creation of this new parole privilege, and this only, that the Legislature sought and attempted to accomplish by the amendment in P.L. 1953, Ch. 382. It follows that the imposition of a life sentence for the crime of murder, without regard to maximum or minimum terms as such, was mandatory in 1956 when this petitioner was so sentenced exactly as it is today.

Appeal denied.

MARDEN and RUDMAN, JJ., did not sit.